Bissell, P. J.,
delivered the opinion of the court.
If the facts which the evidence tended to establish are to be taken as true under our rule, because they rest on the verdict of a jury, there is no error in this record.
In 1890, Sheridan Seaman was the owner of the property which is the subject-matter of this dispute. It consisted of a lot of horses and mules, which were used by him during that season in doing work on a railroad grade. When the season was over, this stock was sent in the care of W. L. Mears, to a ranch belonging to the appellee, Salisbury, to be fed and cared ior during the winter. Whether the stock was delivered to Salisbury, and entrusted to him as an agistor to care for and feed, or whether the stock was in the custody of Mears, and Salisbury simply sold the hay on which they were fed, is the nub of the controversy. The stock arrived at Salisbury’s ranch early in December, 1890, and was in his pasture and his yards from that time forward until the commencement of this suit. In Denver, on the 28th of January, 1891, Sheridan Seaman executed a mortgage to his father, Lafayette Seaman, and H. A. W. Tabor, to secure the payment of a promissory note bearing that date for $2,500, due six months after date. At this time the property was on Salisbury’s ranch, being fed from his stock of hay. This appears to have been known to the mortgagees. The instrument recites that the property is on a ranch at Delta, and the evidence tended to show that the parties had knowledge of the whereabouts of the animals. The stock remained at the ranch during the winter, and for the feed which they consumed, Salisbury, under the statute, Gen. Statutes 1883, § 2118, asserted a lien for what he claimed for their care during this period. In the enforcement of this lien a sale was started, but Lafayette Seaman and Tabor, to enforce their rights, commenced a replevin *337 suit to recover the property. Salisbury defended, and set up his right to retain possession until his claim was satisfied.
While many errors are assigned, but two are relied upon in argument, and they are the only ones of sufficient importance to justify consideration. It is insisted by counsel for appellants, that under the law the rights of the holders of a lien by mortgage are superior to the equities of other lienors, and must prevail over any which may be asserted by the agistor who receives and cares for stock. This troublesome question need not be determined. Strong and very persuasive arguments have been adduced by able judges, in support of their conclusion that the lien of him who feeds the cattle ought to prevail as against the mortgage, since the mortgagee has left the property in the possession of the one executing the security, who is thereby apparently clothed with authority to contract with reference to the stock, and his bargain in such a case has resulted in the preservation and betterment of the security which the mortgagee claims. Other judges contend, with much learning, that the agistor has notice of the existence of the security, and must be presumed to have contracted with reference to its probable enforcement. These controversies, however, have arisen where the security antedated the placing of the stock with the ranchman. It does not seem ever to have been held that where the lien of the fe'eder has had its inception prior to the giving of the security, which is taken with knowledge of the situation of the stock, such subsequent mortgage is superior in its equities.
Counsel have apparently recognized the difficulties of the situation, since their principal argument is addressed to the alleged error that the verdict of the jury is unsupported by the testimony. It may be conceded that on the evidence as it stands, very persuasive arguments might be constructed in support of the conclusion that the jury had misapprehended the full force and effect of the evidence, and had reached a result not wholly justified by the apparent preponderance of the testimony. That, however, does not concern us. If *338 there is testimony in the case on which the jury could rightfully render the verdict which they returned, an appellate court will not, save in a case clearly showing bias or prejudice, disturb the conclusion reached by the body to which is committed the power of determination. The jury were properly instructed. They were clearly and plainly told by the court that if the stock was not entrusted to the ranchman to be fed, but remained in the custody of the owner or his employees, and the ranchman simply sold the feed which was consumed by the animals, and had no other custody of them than that which flowed from the permission to use his yards for feeding purposes, the case was not within the lien statute as against the mortgagees. On the other hand, the court told them that if they found from the testimony that the stock was entrusted to the ranchman, and that it was in reality in his custody for the purpose of care during the winter, that then his lien would attach. On the simple issue thus plainly stated to the jury, they found for the ranchman, and it was adjudged that the plaintiffs were not entitled to recover the possession, except on payment of the amount which Salisbury claimed. It would subserve no useful purpose to prolong this opinion by a discussion of the evidence and an attempted justification of the verdict. It is sufficient to say that on the testimony the jury had a right to so find, and we are not at liberty to disturb their expressed judgment.
Since there are no errors in the record which require the reversal of the judgment, it will be affirmed.

Affirmed.