(September 23, 1926.)

## GLENN C. GOULD and ELIJAH FROST, Respondents, v. FRED J. HILL and PINGREE CATTLE LOAN COMPANY, Defendants, and PORTLAND CATTLE LOAN COMPANY, Appellant.

[251 Pac. 167.]

ANIMALS—AGISTER'S LIEN—FEEDER'S CONTRACT—SURRENDER OF POS-
SESSION—ACTION TO FORECLOSE LIEN—PLEADING—PROPER PARTIES
—CHATTEL MORTGAGES — LIEN SUPERIOR TO SUBSEQUENT MORT-
GAGE — EVIDENCE — FINDINGS — ASSIGNMENTS OF ERROR DEEMED
WAIVED.

1. An agister's lien is strictly statutory, no such lien existing at common law.

2. Under C. S., sec. 6412, persons feeding cattle for compensation to be determined at so much per pound are entitled to agister's lien therefor, in view of section 9444, providing for liberal construction of all statutes.

3. Persons feeding cattle under feeder's contract are not such co-owners as would defeat an agister's lien, under C. S., sec. 6412, as against subsequent mortgagee taking mortgage from one holding bill of sale from owner only.

4. Persons feeding cattle under feeder's contract, who stipulated by written contract for sale of cattle and temporary disposition of money pending determination of their respective claims, have not voluntarily surrendered possession so as to have waived liens under C. S., sec. 6412.

5. Complaint alleging agister's lien on cattle for feeding them under contract, and that one claiming under chattel mortgage had a lien subsequent and subordinate to plaintiff's lien, and setting up stipulation in writing at time plaintiffs had possession of cattle, providing for their sale and disposition of proceeds pending determination of rights of parties, sufficiently states cause of action.

6. Under C. S., sec. 6646, joining original owner and his vendee together with one holding chattel mortgage on property, in action to foreclose agister's lien on cattle under feeding contract, is not a misjoinder of parties.

7. Failure of complaint in action to foreclose agister's lien to state definitely amounts received as result of sale of cattle under stipulation for disposition of proceeds pending determination of rights was not ground for complaint, where defendant received entire proceeds and made disbursements.

Points Decided.

8. Plaintiff may recover if complaint states any cause of action entitling him to relief at law or in equity.

9. Where persons surrendered portion of cattle being fed under feeding contract on express promise that they would be paid in cash for their interest therein at time of delivery, and check given therefor was later refused, there was not such voluntary surrender of possession as would deprive them of lien, under C. S., sec. 6412.

10. Surrendering possession of portion of cattle being fed under feeder's contract would not defeat lien under C. S., sec. 6412, on remainder of animals, since lien becomes impressed on entire mass or herd.

11. Where oral contract for feeding cattle was made on same day as written contract and very shortly thereafter and referred to written one, it should be considered and treated as one contract, oral contract only amending or supplementing written one by changing number of cattle fed.

12. Generally, a common law or statutory lien, dependent on possession, is waived or lost by voluntarily and unconditionally parting with possession or control of property.

13. A lien is not waived or destroyed where there is an intention to preserve same, lienor only conditionally parting with possession.

14. Mortgagee cannot complain of agister's lien on cattle under feeding contract because of addition of cattle to herd other than those on which it held mortgage, where at time of final sale mortgagee received proceeds from all cattle, thereby directly benefiting by transaction.

15. Persons feeding cattle under feeding contract, who had before executing contract made property statements admitting ownership of such cattle in contemplation of getting a loan to purchase them, were not thereby estopped from claiming agister's lien under feeding contract.

16. Persons feeding cattle under feeding contract and executing chattel mortgage on their feed and feed lots to insure good faith and proper performance of contract were not estopped thereby from claiming agister's lien on cattle.

17. Agister's lien for feeding cattle is paramount and superior to lien of chattel mortgage executed subsequently to feeding contract, where it appeared that representatives of mortgagee knew of feeding contract and consented to performance thereof.

18. In action to foreclose agister's lien as against owner and mortgagee, testimony relative to conversations of lienors with agents of mortgagee, and as to dealings with owners with whom mortgagee claimed to be in privity, *held* admissible.

19. Trial court need not make a finding on any issue immaterial to its decision.

20. Appellate court will not disturb or question findings of fact predicated on conflicting evidence where there is substantial evidence to support such findings.

21. Where no objection was made on court's failure to make certain additional findings of fact nor findings requested thereon, it will be presumed that such findings, if made, would have been against appellant.

22. Assignments of error as to which there was no argument or citation of authorities with reference thereto will be deemed waived.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. W. A. Babcock, Judge.

Action for foreclosure of agister's lien and to determine priority of liens on cattle. Judgment for plaintiffs. *Affirmed.*

Merrill & Merrill, for Appellant.

The lien statute does not apply to furnishing feed and services under the circumstances of this case. (C. S., sec. 6412; *Auld v. Travis,* 5 Colo. App. 535, 39 Pac. 357; Jones on Liens, sec. 641; *Vinal v. Spofford,* 139 Mass. 126, 29 N. E. 288; *Jackson v. Kasseall,* 30 Hun (N. Y.), 231;

Publisher's Note.

1. See 1 R. C. L. 1080.
12. See 17 R. C. L. 606.
19. See 26 R. C. L. 1089.

See Animals, 3 C. J., sec. 54, p. 30, n. 34 New; sec. 57, p. 31, n. 54; sec. 59, p. 32, n. 64; sec. 63, p. 34, n. 78, 85, 86 New; sec. 67, p. 35, n. 2, 5 New; sec. 68, p. 36, n. 19 New.

Appeal and Error, 3 C. J., sec. 1591, p. 1428, n. 53, sec. 1593, p. 1431, n. 90, 91; 4 C. J., sec. 2728, p. 778, n. 75; sec. 2855, p. 884, n. 37; sec. 2886, p. 916, n. 25; sec. 2901, p. 927, n. 42.

Chattel Mortgages, 11 C. J., sec. 396, p. 653, n. 98, 2, 5; p. 654, n. 11 New; sec. 412, p. 662, n. 17.

Liens, 37 C. J., sec. 57, p. 336, n. 59; p. 337, n. 62, 65, 69.

Pleading, 31 Cyc., p. 289, n. 61; p. 290, n. 62, 65.

Trial, 38 Cyc., p. 1969, n. 99.

*Ingalls v. Vance,* 61 Vt. 582, 18 Atl. 452; *Lewis v. Tyler,* 23 Cal. 364; *Conklin v. Carver,* 19 Ind. 226; *Lord v. Collins,* 76 Me. 443; *McKee Livestock Co. v. Menzel,* 70 Colo. 308, 201 Pac. 52; *Bailey v. O'Fallon,* 30 Colo. 418, 70 Pac. 755; *Pearce v. Jennings,* 94 Ala. 524, 10 So. 511; *Bissell v. Pearce,* 28 N. Y. 252.)

If a lien were possible, it could only be enforced as provided by statute, or in the manner and for the amount provided in some agreement between the parties. The theory of the plaintiffs' case is not based upon the latter alternative. (C. S., sec. 6412; *Greenawalt v. Wilson,* 52 Kan. 109, 34 Pac. 403; *Speth v. Brangman,* 27 Ky. Law Rep. 295, 84 S. W. 1149; *Griffith v. Grass,* 108 Ky. 160, 55 S. W. 1077; *Crismon v. Barse Livestock Co.,* 17 Okl. 117, 87 Pac. 876; *Dale v. Council Bluffs Sav. Bk.,* 65 Neb. 692, 91 N. W. 526, 94 N. W. 983.)

The court erred in making his findings and particularly in failing to find on all material issues. (*Lorenzi v. Star Market Co.,* 19 Ida. 674, 115 Pac. 490, 35 L. R. A., N. S., 1142; *Brown v. Macey,* 13 Ida. 451, 90 Pac. 339; *Turner Agency v. Pemberton,* 38 Ida. 235, 221 Pac. 133.)

The transaction between Hill and the plaintiffs was a joint venture whereby they became virtually joint owners of the cattle and cannot now assert an interest adverse to the appellants. (*Chrismon v. Barse Livestock Co., supra; Sharp v. Johnson,* 38 Or. 246, 84 Am. St. 788, 63 Pac. 485; *Auld v. Travis, supra; Ellison v. Tuckerman,* 24 Colo. App. 322, 134 Pac. 163.)

J. H. Sherfey and Walters & Parry, for Respondents.

The services rendered by respondents and for which compensation is sought in this action are of the character for which a lien upon the animals pastured and fed is granted by the Idaho statutes. (C. S., sec. 6412; *People v. Hunt,* 1 Ida. 433; *People v. Owyhee Mining Co.,* 1 Ida. 409; *Parsons v. Wrble,* 21 Ida. 695, 123 Pac. 638; *Swain v. Fritchman,* 21 Ida. 783, 125 Pac. 319; *State v. Omaechevviaria,* 27 Ida. 797, 152 Pac. 280; *McQueen v. City of Moscow,* 28 Ida. 146,

152 Pac. 799; *Mendilie v. Snell*, 22 Ida.. 663, 127 Pac. 550, 43 L. R. A., N. S., 731; *Marnella v. Froman*, 35 Ida. 21, 204 Pac. 202; sec. 3051, Cal. Civ. Code; *Seale v. McCarthy*, 148 Cal. 61, 82 Pac. 845.)

By reason of the agreement of the parties (respondents' exhibit "D") which was properly pleaded in the amended complaint, the appellant expressly consented that the questions of the existence, priority and amount of respondents' lien could be tested in an action such as this; because of this express agreement by appellant, respondents did not lose their lien on the cattle by surrendering possession thereof under the terms of this agreement; and since respondents' cause of action as set forth in the amended complaint was brought in reliance upon the agreement of the parties and is in conformity therewith, the amended complaint states a cause of action. (*Lydell v. First Bank of Joseph*, 65 Or. 243, 132 Pac. 518; *Becker v. Brown*, 65 Neb. 264, 91 N. W. 178; *Willard v. Whinfield*, 2 Kan. App. 53, 43 Pac. 314; *Kroll v. Ernest*, 34 Neb. 482, 51 N. W. 1032; *Weber v. Whetstone*, 53 Neb. 371, 73 N. W. 695; *Barse Livestock Com. v. Adams*, 2 Ind. Ter. 119, 48 S. W. 1023; *Everett v. Barse Livestock Com. Co.*, 115 Mo. App. 482, 88 S. W. 165; *Bates v. Capital State Bank*, 21 Ida. 141, 121 Pac. 561; *Speth v. Brangman*, 27 Ky. Law Rep. 295, 84 S. W. 1149.)

Since appellant in its brief has not argued nor cited authorities upon, nor pointed out specifically what the alleged error of the trial court is, as to certain assignments of error, they are deemed to have waived these assignments, and the court will not consider them. (*Bain v. Olsen*, 39 Ida. 170, 226 Pac. 668; *Hardy v. Butler*, 39 Ida. 99, 226 Pac. 669.)

The uncontradicted evidence and the finding of the trial court is to the effect that appellant took its chattel mortgage upon the cattle in question after they were in the possession of respondents as agisters, to be fed and that appellant took said mortgage with full knowledge of respondents' possession of and claims against the said cattle; therefore the lien of appellant's alleged chattel mortgage is subsequent and in-

ferior to respondents' lien for pasturing and feeding the cattle. (*Tabor v. Salisbury,* 3 Colo. App. 335, 33 Pac. 190; *Becker v. Brown,* 65 Neb. 264, 91 N. W. 178; *Snelgrove v. Evans,* 145 Ala. 600, 40 So. 567.)

The trial court made findings of fact upon all of the material issues of the case, upon which competent evidence was introduced; the issues alleged to have been tendered by appellant's affirmative defense upon which appellant claims no findings were made were immaterial to the decision of the case or not sustained by any competent evidence, and therefore the trial court was under no duty to make findings thereon. (*Brown v. Maccy,* 13 Ida. 451, 90 Pac. 339; *Edmundson v. Taylor,* 17 Ida. 618, 106 Pac. 991; *Montpelier M. Co. v. City of Montpelier,* 19 Ida. 212, 113 Pac. 741; *Fouch v. Bates,* 18 Ida. 374, 110 Pac. 265; *Pleasants v. Henry,* 36 Ida. 728, 213 Pac. 565.)

As to the findings of fact which appellant claims are "untrue" and as to finding No. VI, of which it particularly complains, the evidence was conflicting; upon this conflicting evidence the court made a finding of fact, and since there is substantial evidence in support of this, it cannot be disturbed or questioned in the appellate court. (*Brown v. Grubb,* 23 Ida. 537, 130 Pac. 1073; *Brinton v. Steele,* 23 Ida. 615, 131 Pac. 662; *Miller v. Blunk,* 24 Ida. 234, 133 Pac. 383; *Independence Placer Min. Co. v. Knauss,* 32 Ida. 269, 181 Pac. 701; *Consolidated Interstate-Callahan Min. Co. v. Morton,* 32 Ida. 671, 187 Pac. 791; *McKeehan v. Volmer-Clearwater Co.,* 30 Ida. 505, Ann. Cas. 1918E, 1197, 166 Pac. 256.)

Since it did not object in the trial below, appellant cannot complain of the court not making the additional finding which it now says the court should have made; also it will be presumed that such findings would have been against appellant if made. (*Gamble v. Dunwell,* 1 Ida. 268; *Mine etc. Co. v. Idaho etc. Mines Co.,* 20 Ida. 300, 118 Pac. 301; *Donaldson v. Donaldson,* 31 Ida. 180, 170 Pac. 94; *Storey & Fawcett v. Nampa etc. Irr. Dist.,* 32 Ida. 713, 187 Pac. 946; *Fehr v. Haworth,* 33 Ida. 96, 190 Pac. 248.)

ADAIR, District Judge.—For the purpose of brevity we will hereinafter refer to Gould and Frost as plaintiffs, to the Pingree Cattle Loan Company as the Pingree Company, and to the Portland Cattle Loan Company as appellant. This appeal is prosecuted only by said Portland Cattle Loan Company from the judgment rendered against it and in favor of the plaintiffs, the other defendants not joining in the appeal.

Facts connected with some of the questions presented will be omitted here and stated later in this opinion to avoid repetition, but we shall here attempt to very briefly summarize the controlling facts.

In the fall of 1918 plaintiffs formed a partnership for the purpose of feeding cattle, on an extensive scale, during the winter ensuing, on certain feed they controlled and in their feed lots near Buhl, in Twin Falls county, Idaho. Defendant Hill then owned a large herd of cattle, to wit: About 600 head of steers, which he had near Ogden, Utah. In October, 1918, he visited plaintiffs and inspected their feed lots and facilities for handling and feeding livestock. Subsequently, plaintiffs and Hill entered into a written contract which the parties termed a Feeder's Lien Contract, similar to that which is sometimes known among stockmen as a "Spread Contract," for the feeding of Hill's stock by plaintiffs at their feedyards in Idaho. This contract, admitted in evidence in this case, and hereinafter referred to as exhibit "A," provided that Hill was to deliver 551 head of steers to plaintiffs for feeding. These animals were to be weighed and delivered to plaintiffs and to be charged to them at ten cents per pound, and at the close of the feeding period, plaintiffs were to return the steers to Hill and be given credit therefor at thirteen cents per pound, less certain freight charges advanced by Hill for transportation, and interest on the value of the steers at the time of their shipment to date of redelivery, and Hill agreed to pay plaintiffs any balance due them after such adjustment of the account. The contract expressly provided that Hill should

be the owner of all of the cattle at all times during the life of the contract.

Shortly after the agreement was signed the cattle were loaded on cars and shipped to Buhl, consigned to plaintiffs. A large portion of these animals remained there in the exclusive possession of plaintiffs until some time after the end of the feeding period provided for in the contract. There were some additions made to the herd, and also some withdrawals, which facts we will discuss hereafter.

On November 6, 1918, after the steers were in the possession of plaintiffs, defendant Hill executed a bill of sale by which he transferred title to said cattle to defendant Pingree Company. This was done without the knowledge or consent of plaintiffs. On the same day, but after the execution of this bill of sale, said Pingree Company gave a chattel mortgage to appellant to secure the sum of $50,333.34, which purported to cover 548 head of these steers, and also certain feed therein described. It is upon this mortgage that appellant bases its claim in this action.

The undisputed evidence further shows that on the day the contract, exhibit ''A,'' was executed, Hill informed plaintiffs that he still had some cattle on the range which he had not rounded up, and an oral agreement was then entered into between these parties, by the terms of which it was agreed that these remaining cattle, when secured by Hill, should be shipped to plaintiffs and added to the herd and held and fed by them under the terms of the written agreement. Later, under this oral contract, forty-nine additional steers were consigned by Hill to plaintiffs where they were commingled with the cattle composing the first shipment. Shortly after all these animals were in the possession of plaintiffs, 125 head thereof were withdrawn by mutual agreement, and taken elsewhere for feeding, and that number of said stock were no longer involved in this transaction.

May 2, 1919, the date upon which, under the feeding contract, these cattle were to be redelivered to the owner, no one appeared to receive them, although plaintiffs had demanded such redelivery, such demand having been made

upon all of the defendants to this action. No one appeared to receive the cattle under the terms of the contract, but, on the other hand, appellant did make an unsuccessful effort to take the cattle, under its mortgage and without paying plaintiffs their claim for feeding. The weather had become warm, these wild range steers had become restive, all the hay and corn which plaintiffs controlled had been fed, and the great activity of these animals was rapidly dissipating the effect of the feed and care theretofore bestowed upon them, and they were steadily losing weight. Plaintiffs refused to let any person take possession until their claim was paid in full under their contract, and appellant claimed the right to immediate possession under its mortgage, and as positively refused to recognize any agister's lien in favor of plaintiffs. The controversy continued for some time, after which an agreement was arrived at, duly written, signed by all the parties and delivered, which contract was admitted in evidence as exhibit "D," by the terms of which it was agreed that all the steers then in the possession of plaintiffs were to be sold forthwith and that a certain disposition of the proceeds of the sale should be made. This agreement in effect provided that such disposition of the money thus obtained was only temporary, and that the parties might test the validity and priority of their respective claims and liens in court, it being particularly agreed that the jurisdiction and authority of the court would and should be the same as though plaintiffs had retained possession of these animals. The steers were shipped to market, accompanied by a representative of both appellant and plaintiffs, and the money was distributed as provided for in said contract, that is, a sufficient amount was paid to appellant to fully discharge its mortgage and the balance to plaintiffs.

Thereafter plaintiffs commenced this action to recover the balance which they claimed due them, and obtained judgment against appellant for the sum of $14,987.94, from which judgment this appeal was taken.

Appellant's forty assignments of error will be grouped and considered herein, under appropriate subdivisions or

classifications without reference to each specifically by number.

[1] An agister's lien is strictly statutory, no such lien existing at common law. If plaintiffs in this case have such a lien, it is by virtue of the provisions of C. S., sec. 6412, which reads in part:

"Livery or boarding or feed stable proprietors, and persons pasturing livestock of any kind, have a lien, dependent on possession, for their compensation in caring for, boarding, feeding or pasturing such livestock."

[2] Plaintiffs did board and feed these cattle for a stipulated and agreed compensation. It makes no difference whether that compensation was at a certain rate per day or month, or what the basis agreed upon, so long as payment was to be made under some standard of compensation. Plaintiffs had feed lots wherein they furnished feed for these animals. They contracted to and did protect the steers from storms by windbreaks, and bedded them with straw, and at all times furnished them with plenty of feed and water with the object of fattening and finishing them for market.

There is no warrant for judicially inserting into this statute any provision, restriction or meaning not intended by the lawmakers. It was not designed simply for the protection of livery-stable proprietors or persons engaged in such public service. All statutes should be liberally construed to give their intended effect and promote justice. (C. S., sec. 9444.) The only logical construction of this section is that its purpose was to and that it does protect all persons rendering such services as feeding and caring for livestock of others, for the reasonable or agreed compensation for such services. All the attending circumstances in this case clearly bring plaintiffs within the purview and protection of this statute, and extend to them the benefits thereof.

[3] Appellant asserts that these plaintiffs, by virtue of the feeder's contract, became and were co-owners with Hill, and that this was in effect a joint venture in the nature of a copartnership. It contends that if plaintiffs were part

owners of these animals they could not have a lien thereon. The feeder's contract expressly provides that Hill "shall at all times be the owner of said cattle." Hill gave a bill of sale to the Pingree Company in which he alone was the vendor. The Pingree Company alone executed the chattel mortgage to appellant and neither of these parties requested plaintiffs to join in its execution. The transfer to Pingree Company was made without the knowledge or acquiescence of plaintiffs. They never were recognized by appellant or any of the other defendants at any time as having any title whatsoever to these cattle or any part thereof. The very mortgage upon which appellant bases its claim could convey to it only the interest which the Pingree Company had in the chattels therein described. If the plaintiffs were in fact part owners, their interest was not mortgaged to appellant, and upon the sale, under exhibit "D," plaintiffs would have been entitled to full pay for their interest before appellant could participate in the proceeds, as mortgagee of Hill's interest or the Pingree Company's interest in the cattle. The argument that the evidence shows plaintiffs to have been part owners is untenable when all the facts are considered.

[4] It is seriously urged that because plaintiffs, under the conditions of contract, exhibit "D," voluntarily surrendered possession, they waived their lien, if any they ever had. Such a position does violence to all the rules of fair play and justice, and is not in keeping with the express terms of the solemn agreement of the appellant to the contrary. At the time this latter agreement was made, the feeding period provided under exhibit "A" had terminated. and for some time it had been the duty of the owner of the cattle to accept delivery and pay the plaintiffs for their feed and services theretofore furnished and rendered. Plaintiffs were urgently endeavoring to force the owner to take the cattle and pay them under the contract. At this very time appellant was demanding possession under its chattel mortgage, and denying the rights of plaintiffs to a lien. The cattle were shrinking in weight, the feed was exhausted, and facilities for keeping them longer were at an end. Under

these circumstances it was mutually conceded that, unless the cattle were immediately placed on the market, someone would suffer an irreparable loss. The controversy over the diverse rights could not be settled then and there, or without protracted litigation and serious losses. For the protection of all concerned contract exhibit "D" was executed, so that the cattle could be marketed, without any person relinquishing any right whatsoever as a result of surrendering possession. The sole function and purpose of this contract was to permit the immediate sale of the steers, and the temporary retention of the proceeds, and to allow the various parties thereafter to adjudicate their respective claims, as though plaintiffs still retained the animals. To place any other construction on this contract would render it meaningless. The trial court correctly interpreted it to mean exactly what it was intended to import and accomplish.

[5]   One of the most serious contentions of appellant is that the amended complaint does not state a cause of action. The fundamental right which plaintiffs had and which they sought to enforce was their claim to a certain amount of money due them for feeding and caring for these steers, and which money was then in the hands of appellant, having been obtained by it as a result of the selling contract, exhibit "D" and the sale of the cattle thereunder. In their complaint plaintiffs assert an agister's lien on the cattle, which they claim a right to enforce; that they had possession of these animals under the feeding contract from November, 1918, to May, 1919; that the defendant Hill and the defendant Pingree Company severally claimed to own said livestock; and that appellant claimed to have a chattel mortgage thereon, but that its lien is subsequent and subordinate to plaintiffs' lien; that after the end of the feeding period a controversy arose over these respective claims; that it was mutually agreed in writing, at a time when plaintiffs still had possession of these animals, that the same should be sold at once, a certain disposition made of the proceeds, and that this should be done without prejudice to the rights of

the parties to thereafter adjudicate their claimed liens, as though said cattle had been retained in the possession of the plaintiffs. They, in effect, allege the performance of the services in feeding and caring for the cattle, the amount due them therefor under the contract, and that the animals have left their possession and been converted into cash under and by virtue of a written agreement, exhibit "D," attached to the complaint; that under said last mentioned contract all the parties agreed that plaintiffs did not waive any rights they might have had by surrendering possession of the stock, but that these rights should be determined in the same court and in the same manner as though said plaintiffs still retained possession in their feed lots, and they prayed that judgment be entered determining their lien to be prior and superior to that of appellant, and that it be foreclosed as though this action were brought to impress a lien on cattle still in their possession. This is the gist of the complaint.

[6] Under the provisions of C. S., sec. 6646, plaintiffs had the unquestioned right to make any person a defendant who had or claimed an interest in the controversy adverse to them, or who was a necessary party to a complete determination or settlement of all questions involved in the transaction. There was no misjoinder of parties.

[7] Appellant, among other things, complains that the allegations of the complaint do not definitely show the amounts received by it as a result of the sale of the cattle under exhibit "D." This was a matter particularly within the knowledge of appellant, it having received the check for the entire proceeds of sale, and made the disbursements, and was a matter of defense, not necessary to be alleged by plaintiffs.

[8] A plaintiff may recover if his complaint states any cause of action entitling him to relief at law or in equity. (*Casady v. Scott*, 40 Ida. 137, 237 Pac. 415.)

We think that this complaint alleged every ultimate and material fact necessary to a complete determination of the cause. A demurrer and certain motions to strike and make more definite and certain, interposed by appellant, were

without merit and were by the trial court properly over-ruled.

[9] It appears from the evidence that in the latter part of March, or first of April, 1919, there were 199 head of cattle removed from this herd. This was due to the fact that at that time some of the cattle had reached the stage where they were ready for market. Defendants and plaintiffs wished to ship that portion of the stock instead of waiting until the end of the contract period. Hill desired to apply all the proceeds of the shipment to the payment of appellant's mortgage, but plaintiffs refused this proposition. As a compromise it was agreed that $100 per head of the amount received should be paid to appellant and the balance of the sale price realized, when computed, should be paid to plaintiffs. A check for this excess over the price of $100 per head, amounting to $8,007.50 was given, signed Pingree Cattle Loan Company, by Fred J. Hill, Agent, to plaintiffs, but payment thereof was stopped and refused after plaintiff had lost possession of the animals. Plaintiffs were induced to part with their possession of 199 head of cattle on the express promise that they would be paid in cash for their interest therein, at the time of delivery. They accepted the check as cash, believing that it would be paid on presentation and in due course. This was not a voluntary surrender of possession such as would deprive them of their lien, and undoubtedly their lien still existed thereafter, under such circumstances, on the 199 head so surrendered. [10] Regardless of this, however, their agister's lien was impressed, not upon each individual steer, but upon the entire mass or herd, and they having surrendered possession in this manner of a portion of the animals were entitled to retain their lien upon the remainder of the herd for the entire amount due them, whether such surrender was voluntary, or induced by fraud.

[11] While there was a written and an oral contract made for the feeding of these animals, both were made on the same day and the oral contract was made very soon after the written contract was executed and it referred to

the written one, and they were so closely connected that they should be considered and treated as one contract. The oral contract amended and supplemented the written one by changing only the number of cattle to be fed.

[12] As a general rule, a common law or a statutory lien, dependent upon possession, is waived or lost, by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches.

[13] However, the lien is not waived or destroyed where there is an intention to preserve the same, the lienholder only conditionally parting with possession.

"Nor is the lien lost where the property is taken from his possession without his consent by force or fraud. . . . .

"Where property is delivered to a person under a single contract and a part is voluntarily returned without payment, the lienor will retain his lien on the part remaining in his possession for the whole amount due under the contract." (37 C. J. 337, sec. 57, and authorities cited under note 69.)

The fraudulent acts of some of the parties induced plaintiffs to surrender possession of a portion of the animals, and under those circumstances, they never having had any intention of waiving their rights, are entitled to impress their lien upon the balance of the cattle which they retained in their possession for the entire amount of their feed bill.

[14] Again appellant complains of the judgment entered because some 49 additional head of steers were added to the herd after the first shipment, such animals being others than those upon which it had its mortgage, and that these animals were so commingled that they were incapable of identification. But appellant cannot justly complain when it is remembered that the plaintiffs had an agister's lien on all of the cattle, whether mortgaged or not, and that at the time of final sale appellant, as mortgagee, received the proceeds from all the cattle, thereby directly benefiting by the transaction, in that it received a large portion of the money derived from such sale of cattle so added to the herd and on which it had no mortgage or other lien whatsoever.

[15] The evidence developed the fact that prior to the making of the feeding contract, Hill endeavored to sell these cattle to plaintiffs outright. Plaintiffs considered the proposition for a time and contemplated getting a loan with which to finance the deal. In connection with such purpose they executed a duly verified property statement, showing their assets and liabilities, wherein they claimed ownership of these identical steers. The negotiations for purchase ended without result, and subsequently the feeding contract was entered into. During the trial appellant introduced these property statements in evidence, thereby attempting to prove that plaintiffs actually became owners or part owners, or at least admitted ownership of these animals, and appellant now contends that as a consequence plaintiffs have no lien. After the execution of the feeding contract, plaintiffs never did at any time claim to be the owners of these steers.

[16] Again, it appears from the evidence that after the feeding contract was signed plaintiffs at the behest of the Pingree Company gave it a chattel mortgage on their feed and feed lots to insure good faith and proper performance of their contract. This mortgage did not cover the cattle. This action was in accord with the terms of the feeding contract and not inconsistent with their claim of lien on the cattle. The plaintiffs were not estopped from claiming their lien either by reason of the execution of the chattel mortgage on the feed and feed lots, nor by making such property statements.

[17] It positively appears from the evidence that the mortgage held by appellant was executed some days after plaintiffs had actually made the feeding contract and were in actual possession of the cattle. Representatives of appellant were at the feed lots at different times looking after the cattle, in conference with plaintiffs and conversant with all the facts, and it is at least a fair inference and may be implied from all the circumstances that the mortgagee, the appellant herein, knew of the contract and of the claims of plaintiffs, and consented to their performance of such contract. The agister's lien was paramount, prior and superior to the lien of said chattel mortgage.

In *Marnella v. Froman,* 35 Ida. 21, 204 Pac. 202, this court said:

"The weight of authority and the better reason held that the lien of a chattel mortgage is superior to an agister's lien, where the former is prior in time, unless the services upon which the agister's lien is based were performed with the consent of the mortgagee, either express or implied from the circumstances."

In support of the rule that the agister's lien is superior under such circumstances, we cite also: 11 C. J. 653; *Tabor v. Salisbury,* 3 Colo. App. 335, 33 Pac. 190; *Becker v. Brown,* 65 Neb. 264, 91 N. W. 178; *Snellgrove v. Evans,* 145 Ala. 600, 40 So. 567.

[18] The trial court committed no error in the admission of testimony relative to conversations with certain agents of appellant, and since appellant was claiming in privity with the defendants Hill and Pingree Company, the evidence as to dealings between these parties and plaintiffs was entirely proper and admissible. (*Madill v. Spokane Cattle Loan Co.,* 39 Ida. 754, 230 Pac. 45.)

[19] The trial court was not required to make findings on any issue immaterial to its decision. It did make findings of fact upon all the material issues upon which competent evidence was adduced. There was no error committed in failing to make findings on immaterial issues tendered by the affirmative defenses.

"While findings of fact are required upon all material issues, a decree will not be reversed, however, for want of a finding upon one such issue raised by the pleadings and sustained by the evidence, when such a finding would neither affect nor prevail over the other findings in the case." (*Pleasants v. Henry,* 36 Ida. 729, 733, 213 Pac. 565.)

"Where the defendant's answer and cross-complaint present no material or substantial issues, and findings made thereon, whether in favor of or against the contention of the defendant, would not, as a matter of law, alter the judgment, it is unnecessary to make findings thereon, and a failure to do so is not error for which a new trial will be granted."

(*Brown v. Macey,* 13 Ida. 451, 90 Pac. 339; *Montpelier M. Co. v. City of Montpelier,* 19 Ida. 212, 113 Pac. 741; *Koon v. Empey,* 40 Ida. 6, 231 Pac. 1097.)

[20] Appellant urges that the findings of fact are contrary to and in conflict with the weight of the evidence. That the appellate court will not disturb or question findings of fact predicated upon conflicting evidence where there is substantial evidence to support such findings is so fundamental and well settled that citation of authority on such proposition is unnecessary.

[21] Appellant alleges as error the failure of the trial court to make certain additional findings of fact, but it did not object to such failure in the court below, or request findings on such issues there. It will be presumed that such findings, if made, would have been against appellant. (*Gamble v. Dunwell,* 1 Ida. 268; *Mine etc. Co. v. Idaho etc. Mines Co.,* 20 Ida. 300, 118 Pac. 301; *Donaldson v. Donaldson,* 31 Ida. 180, 170 Pac. 94; *Storey & Fawcett v. Nampa etc. Irr. Dist.,* 32 Ida. 713, 187 Pac. 946; *Fehr v. Haworth,* 33 Ida. 96, 190 Pac. 248.)

[22] With respect to many of the various assignments of error no argument was made either orally or in the printed brief, nor were any authorities cited with reference thereto, nor did appellant specifically point out in what the alleged errors consisted, and under the well-known rule heretofore announced by this court, these assignments will be deemed waived, and we will not consider them. (*Bain v. Olsen,* 39 Ida. 170, 226 Pac. 668; *Hardy v. Butler,* 39 Ida. 99, 226 Pac. 669; *Nelson v. Johnson,* 41 Ida. 697, 243 Pac. 647.)

We find no error, and it appearing from an examination of the entire record that substantial justice was done in this case, the judgment appealed from will be affirmed, with costs to respondents.

Wm. E. Lee, C. J., and Givens and Taylor, JJ., concur.

Petition for rehearing denied.