44 P.3d 1117

**AG SERVICES OF AMERICA, INC., and its Assignee, Ag Acceptance Corp., an Iowa corporation, Plaintiff–Appellant,**

v.

**Richard L. KECHTER, Personal Representative of the Estate of Michael Gene KECHTER; and Jennifer Kechter, Defendants–Respondents.**

No. 27212.

Supreme Court of Idaho, Twin Falls, November, 2001 Term.

Jan. 17, 2002.

Rehearing Denied April 12, 2002.

Stephan, Kvanvig, Greenwood, Stone & Trainor, Twin Falls, for appellant. Kevin F. Trainor argued.

Parsons, Smith & Stone, Burley, for respondent. William A. Parsons argued.

EISMANN, Justice.

The plaintiff appeals from a decision of the district court holding that the plaintiff's perfected security interest in the proceeds of the sale of a potato crop is subordinate to the lien of the warehouseman who stored the potatoes prior to their sale. We vacate the decision of the district court.

## I. FACTS AND PROCEDURAL HISTORY

Ag Services of America, Inc. (herein "Ag Services") loaned money to a farmer named Shane Lierman to be used in raising various crops, including potatoes, during the 1999 growing season. To secure payment of those loans, Lierman granted Ag Services a security interest in his crops and in their proceeds. Ag Services properly perfected its security interest and later assigned its rights to Ag Acceptance Corporation. For convenience we will refer to the plaintiff as "Ag Services."

Upon harvesting the potatoes, Lierman stored a portion of his potato crop in a potato cellar owned by Michael Gene Kechter. In January 2000 Michael Kechter granted a general power of attorney to his father Richard Kechter, and on July 12, 2000, Michael passed away. On July 28, 2000, Richard Kechter was appointed personal representative of Michael's estate. Jennifer Kechter is Michael's surviving spouse. Michael, his father Richard, acting as both attorney in fact and personal representative, and Jennifer Kechter are herein collectively referred to as "Kechter."

Lierman contracted to sell to Nonpareil Processing Corporation (herein "Nonpareil") the potatoes he had stored in Kechter's potato cellar. After some of the potatoes were delivered to Nonpareil, it rejected the remainder of the crop. Lierman then contracted to sell the remaining potatoes to the J.R. Simplot Company (herein "Simplot"). When Kechter learned that Lierman's potatoes were being removed from his potato cellar for shipment to Simplot, his counsel wrote a letter dated June 2, 2000, to Simplot in which he stated that Kechter claimed a lien on the potatoes and would stop them from being removed from the potato cellar unless Sim-

plot agreed to put Kechter's name on the check issued in payment of the potatoes. Simplot apparently agreed to do so, and in June 2000 all of Lierman's ·potatoes remaining in Kechter's potato cellar were shipped to Simplot. On August 1, 2000, Simplot issued a check in the sum of $256,819.90 in payment for Lierman's potatoes. The payees on the check included Kechter and Ag Services. ·

Kechter claimed a lien pursuant to Idaho Code § 28–7–209A in the amount of $60,000 on the check issued by Simplot. Ag Services countered that Kechter had lost its lien when it relinquished possession of the potatoes. They agreed to negotiate the check and to deposit $81,600 in a bank account until they could resolve the matter.

On October 6, 2000, Ag Services brought this lawsuit to resolve the issue. It alleged that it had a properly perfected security interest in the proceeds of the sale of Lierman's potatoes, that Kechter did not have a valid claim to the proceeds, and that Ag Service was entitled to the entire sum on deposit. Kechter answered and filed a counterclaim alleging that he had a valid lien on the proceeds under Idaho Code § 28–7–209A and that he was entitled to $60,000 from the sum on deposit, plus fees and costs. Both parties moved for summary judgment. The district court granted Kechter's motion for summary judgment and awarded him $60,000 of the sum on deposit, court costs including attorney fees under Idaho Code § 12–120(3), and prejudgment interest. Ag Services then appealed.

## II. ANALYSIS

■ The facts relevant to the issue decided by the district court are not in dispute. The only issue is the interpretation of Idaho Code § 28–7–209A(1), which provides:

(1) An agricultural commodity warehouseman, as such term is defined in subsection (2) of this section has a lien, dependent upon possession, upon any agricultural commodity deposited with the warehouseman, or stored in or upon the warehouseman's premises, and any proceeds of sale of such agricultural commodity, which lien shall secure payment of any and all lawful charges incurred or payable for the storage, preservation, transportation, labor, weighing, testing, processing, milling, improvement, sale or similar expense incurred with regard to such agricultural commodity.

The specific issue is whether the lien on the proceeds is "dependent upon possession" of the proceeds.

■ This Court's primary duty in interpreting a statute is to give effect to the legislative intent as ascertained from the statutory language. *Adamson v. Blanchard,* 133 Idaho 602, 990 P.2d 1213 (1999). The Court may also seek edification from the statute's legislative history and the historical context in which it was enacted. *Id.*

The statute grants to an agricultural commodity warehouseman "a lien, dependent upon possession." Because the phrase "dependent upon possession" modifies the word "lien," the legislature clearly intended that any lien created under the statute be dependent upon possession. The statute grants "a lien, dependent upon possession, upon" three classifications of property. First, it grants "a lien, dependent upon possession, upon any agricultural commodity deposited with the warehouseman." Second, it grants "a lien, dependant upon possession, upon any agricultural commodity ... stored in or upon the warehouseman's premises." Finally, it grants "a lien, dependent upon possession, upon ... any proceeds of sale of such agricultural commodity." In each instance, however, the lien granted is dependent upon possession.

The phrase "dependent upon possession" or "dependent on possession" has long been used in Idaho lien statutes. See e.g., REV. STAT. OF THE TERR. OF IDAHO §§ 3445, 3447, & 3448 (1887). This Court first commented upon the meaning of the phrase in *Hill v. Twin Falls Salmon River Land & Water Company,* 22 Idaho 274, 125 P. 204 (1912), in which the plaintiffs sought to foreclose a mechanic's lien for the value of their services in hauling concrete from the railroad station to the construction site. They prevailed in the trial court, and the landowner appealed. On appeal the landowner contended that the plaintiffs were not entitled to a mechanic's

lien and that the only lien to which they could be entitled would be under a statute which granted a lien "dependent on possession" for services rendered in transporting an article of personal property. This Court stated that the plaintiffs would have lost any lien they had under that statute because, "[W]hen the cement was delivered to the appellant, and the possession was surrendered to the appellant, the right to a lien ceased, as the right of lien conferred by this section depends wholly upon the possession of the property." 22 Idaho at 279, 125 P. at 206. The Court then held that the plaintiffs were entitled to a mechanic's lien for their services in hauling the cement to the construction site.

In *Gould v. Hill*, 43 Idaho 93, 251 P. 167 (1926), the plaintiffs brought an action to foreclose an agister's lien under a statute which granted a lien "dependent on possession" for services rendered in feeding and pasturing livestock. This Court acknowledged, "As a general rule, a common-law or statutory lien, dependent upon possession, is waived or lost by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches." 43 Idaho at 107, 251 P. at 171. It then held that the plaintiffs had not lost their lien on some cattle that were returned to the owner because the owner had obtained possession of those cattle by fraud. He had given the plaintiffs a check for their services and then stopped payment on the check once he had possession of the cattle.

In *Seafoam Mines Corporation v. Vaughn*, 56 Idaho 342, 53 P.2d 1166 (1936), the appellant had hired the respondent to look after a mine. When he was not paid for his services, the respondent foreclosed a statutory lien on the personal property associated with the mine and purchased that property at the foreclosure sale. The appellant then filed an action to enjoin respondent from removing the personal property from the mine. On appeal, the appellant argued, among other things, that respondent should not be entitled to a lien for his services rendered in caring for the property during the period from the demand for payment until the foreclosure sale. The statute provided that the

lien was "dependent on possession." When addressing that issue, this Court noted, "The lien was dependent on possession, so respondent had to continue in possession until foreclosure." 56 Idaho at 350, 53 P.2d at 1169. This Court then held that respondent's continued possession of the property was of a dual nature. It stated, "[T]he lien claimant must not only hold the property to protect and perfect his lien, but he must also hold the property in order to return it to the owner if the claim is paid or tender made." 56 Idaho at 351–52, 53 P.2d at 1170.

Finally, Idaho Code § 45–115 provides:

The voluntary restoration of property to its owner by the holder of a lien thereon, dependent upon possession, extinguishes the lien as to such property, unless otherwise agreed by the parties, and extinguishes it notwithstanding any such agreement, as to creditors of the owner and persons subsequently acquiring a title to the property, or a lien thereon, in good faith and for a good consideration.

From this Court's interpretation of other statutes creating a lien that is dependent upon possession, and the wording of Idaho Code § 45–115, it is clear that the phrase "dependent upon possession" has been used historically in Idaho to mean that the lien exists only so long as the lien claimant remains in possession of the property to which the lien is attached. That is consistent with what is generally understood to be the law in this area. "A common-law lien or a statutory lien that is dependent on possession continues only so long as possession is voluntarily retained." 51 AM. JUR 2D *Liens* § 60 (2000).

Kechter voluntarily relinquished possession of the Lierman's potatoes in June 2000. Thus, any lien he had in the potatoes was extinguished. The issue is whether or not his lien continued in the proceeds of the sale of the potatoes. Because the lien granted by Idaho Code § 28–7–209A(1) is dependent upon possession and is extinguished when possession is relinquished, the lien would continue only so long as Kechter had possession of property to which the lien could attach. The lien would continue in the proceeds only if Kechter had possession of the

proceeds at or before the time he relinquished possession of the potatoes.[1] Once he no longer had possession of property to which the lien could attach, the lien was extinguished.

Kechter argues that his name on the check issued by Simplot constituted possession of the proceeds.[2] Even if we were to so hold, his lien was extinguished long before that check was issued. He relinquished possession of the potatoes in June 2000, and the check was not issued until August 1, 2000. "The lien is extinguished if the lienor voluntarily parts with possession, and cannot be restored thereafter by the lienor's resumption of possession." 51 Am. Jur. 2d *Liens* § 60 (2000). Even if Kechter's name on the check constituted possession of it, such possession could not revive the lien that had been extinguished almost two months earlier when he relinquished possession of the potatoes. In order to preserve his lien, the warehouseman must retain possession of the agricultural commodity until he is paid. Thus, the district court erred in holding that Kechter had a lien on the check issued by Simplot in payment of the potatoes.

Kechter argues that requiring the lien granted by Idaho Code § 28–7–209A to be dependent upon possession contradicts the legislative purpose for enacting the statute. The statute was enacted in response to this Court's ruling in *Curry Grain Storage, Inc. v. Hesston Corporation,* 120 Idaho 328, 815 P.2d 1068 (1991). In *Curry* this Court held that a warehouseman's lien for cleaning, processing, and storing grass seed did not have priority over a previously perfected security interest in the seed. The statute creating the lien provided that it would have priority over a previously perfected security interest if the secured party had so entrusted the owner with possession of the seed that a pledge of the seed by the owner to a good faith purchaser for value would have been valid. Because the secured party had not done so in the *Curry* case, this Court held that the warehouseman's lien did not have priority over the previously perfected security interest. In response, the legislature enacted Idaho Code § 28–7–209A to provide that an agricultural commodity warehouseman's lien would have priority over a previously perfected security interest. The *Curry* case did not address the issue of the loss of a warehouseman's lien if the warehouseman relinquished possession of the collateral.

The lien created by Idaho Code § 28–7–209A can only apply to an agricultural commodity that was in the possession of the warehouseman. It only applies to a commodity "deposited with the warehouseman, or stored in or upon the warehouseman's premises." If the legislature merely intended that the lien granted by the statute be created by possession of the commodity and thereafter continue regardless of possession, there would have been no reason for the legislature to include the limitation that the lien was "dependent upon possession." To construe the statute to mean that a lien is created when a warehouseman takes possession of an agricultural commodity and that the lien thereafter continues regardless of

---

1. Had Kechter foreclosed his lien by selling some or all of the potatoes and received payment at or before the time he relinquished possession of the potatoes sold, his lien would have continued in the proceeds of that sale and would have been superior to any party claiming the proceeds based upon a prior perfected security interest in the potatoes and their proceeds.

2. At the time relevant to this case, "proceeds" were defined as follows:

"Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Any payments or distributions made with respect to investment property

collateral are proceeds. Money, checks, deposit accounts, and the like are "cash proceeds." All other proceeds are "noncash proceeds."

Ch. 272, § 13, 1995 Idaho Sess. Laws 873, 913. The check issued by Simplot was cash proceeds. A majority of courts hold that an account created as a result of the sale of the collateral constitutes proceeds even though the seller had not yet received payment on that account. Ronald A. Anderson & Lary Lawrence, Anderson on the Uniform Commercial Code 218 (3d ed., 1999 rev.) Under the majority view, Lierman's account receivable owing by Simplot would be noncash proceeds. Kechter does not contend that he retained possession of any noncash proceeds from the sale of the potatoes.

possession would render the phrase "dependent upon possession" merely surplusage. We will not construe a statute in a way that makes mere surplusage of provisions included therein. *Sweitzer v. Dean,* 118 Idaho 568, 798 P.2d 27 (1990).

Both parties request attorney fees pursuant to Idaho Code § 12–120(3). They contend that this case involved a commercial transaction. The statute does not authorize the awarding of attorney fees every time a commercial transaction is connected with the case. *Bingham v. Montane Resource Assoc.,* 133 Idaho 420, 987 P.2d 1035 (1999). The test is whether the commercial transaction constitutes the essential part of the lawsuit. *Id.* There was certainly a commercial transaction between Lierman and Kechter and between Lierman and Ag Service, but there was no commercial transaction between Ag Service and Kechter. Rather, the thrust of Ag Service's claim was that it was entitled to the entire proceeds from the sale of Lierman's potatoes because Kechter's lien was invalid. Likewise, Kechter's counterclaim merely alleged an entitlement to a portion of the proceeds based upon his claimed lien. Ag Service and Kechter were not involved in any commercial transaction between themselves, nor did either of them allege such a transaction in their respective pleadings. Therefore, attorney fees cannot be awarded under Idaho Code § 12–120(3). *Bingham v. Montane Resource Assoc.,* 133 Idaho 420, 987 P.2d 1035 (1999).

### III. CONCLUSION

The district court erroneously held that a lien created by Idaho Code § 28–7–209A is not dependent upon possession, and therefore its judgment must be vacated. Kechter also alleged that Ag Service was estopped to deny his claim to the proceeds of the sale of Lierman's potatoes. Because the district court did not address that issue, this case must be remanded for further proceedings. The judgment entered by the district court is vacated, and this case is remanded for further proceedings consistent with this opinion. Ag Services is awarded costs on appeal, but not attorney fees.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL CONCUR.