815 P.2d 1068

**CURRY GRAIN STORAGE, INC., an Idaho Corporation, Plaintiff–Appellant,**

v.

**HESSTON CORPORATION and Ida–Man, Inc., Defendants–Respondents.**

**IDA–MAN, INC., Counterclaimant–Respondent,**

v.

**CURRY GRAIN STORAGE, INC., an Idaho Corporation, Counterdefendant–Appellant.**

No. 18714.

Supreme Court of Idaho, Boise, May 1991 Term.

Aug. 19, 1991.

Hepworth, Nungester & Lezamiz, Twin Falls, for plaintiff-appellant. John C. Hohnhorst, argued.

Rosholt, Robertson & Tucker, Twin Falls, for defendant-respondent Hesston. Justin R. Seamons, argued.

Ling, Nielsen & Robinson, Rupert, for defendant-respondent Ida–Man, Inc. David W. Haley, argued.

JOHNSON, Justice.

In this case we are asked to determine whether a warehouse lien for cleaning, processing and storing grass seed has priority over a previously perfected security interest in the seed. In deciding the case we are required to determine whether the statute dealing with liens for services on or caring for property (I.C. § 45–805) or provisions of the Uniform Commercial Code (UCC) govern. We must also decide what portions of the UCC apply to this case.

We hold that the UCC, and not I.C. § 45–805, governs the warehouse lien in this case. We also conclude that I.C. § 28–7–209 applies, rather than I.C. § 28–9–310, and that the perfected security interest has priority over the warehouse lien.

I.

THE BACKGROUND AND PRIOR PROCEEDINGS.

Ida–Man, Inc. contracted to harvest grass seed (the seed) grown on land owned by various landowners (the growers). Ida–Man also contracted with others (the harvesters) to harvest the seed. The harvesters were required to deliver the seed to bonded warehouses designated by Ida–Man. By agreement, the seed that was harvested was owned partly by Ida–Man, partly by the growers, and partly by the harvesters.

In the spring of 1987, Ida–Man entered into a seed cleaning contract with Curry

Grain Storage, Inc. By the terms of this contract, Ida–Man agreed to deliver all the seed harvested during the crop year 1987–88 to Curry for cleaning, processing and storing and to pay Curry for these services.

In May, 1987, Ida–Man purchased harvesting equipment from Hesston Corporation and borrowed money from Hesston to acquire additional harvesting equipment. As part of these transactions, Ida–Man and the harvesters granted Hesston a security interest in the seed, which Hesston perfected by filing as provided for in the UCC.

By agreement with Hesston, Ida–Man was required to obtain warehouse receipts issued in Ida–Man's name from the warehouse to which the seed was delivered. The warehouse receipts were then to be delivered to an accounting firm to be held in trust for Hesston, Ida–Man, and the harvesters. The accounting firm was allowed to release the warehouse receipts only to effectuate a sale of the seed and to hold the net proceeds of any sale in trust for Hesston, Ida–Man, and the harvesters for distribution in accordance with the terms of an agreement of these parties entered into in May 1987.

In the summer and fall of 1987, Ida–Man and the harvesters delivered the seed to Curry. Curry issued weight tickets for these deliveries and began cleaning and processing the seed. Curry billed Ida–Man for the cost of these services. Ida–Man was unable to market the seed and failed to pay either Curry or Hesston. Disputes arose over whether the seed would be released by Curry to harvesters over the objection of Ida–Man and Hesston.

Curry filed an interpleader action naming Hesston, Ida–Man, as well as the growers and the harvesters alleged by Curry to have some interest in the seed stored in Curry's warehouse. Curry asked the trial court to determine the disposition of the seed, subject to payment of Curry's charges for the services provided in connection with the seed. Hesston asserted that its security interest was superior to the interests of Curry, Ida–Man, and any others who had an interest in the seed. Ida–Man counterclaimed against Curry alleging damages for breach of contract. The trial court ordered a separate trial of the counterclaim. The interests of the growers and harvesters in the seed and its proceeds were resolved separately and are no longer involved in this case.

Pursuant to a stipulation of Curry, Hesston, and Ida–Man, the trial court ordered that some of the seed held by Curry be sold and that the proceeds of the sale be deposited in court pending an order regarding the disbursement. Hesston and Ida–Man filed a motion asking the trial court to determine the distribution of the proceeds of the sale. Curry asserted that it was entitled to the proceeds because Curry has a lien on the seed pursuant to I.C. §§ 45–805 and 28–7–209 for the cost of cleaning, processing and storing the seed. Hesston sought the proceeds as the holder of a prior perfected security interest in the seed. Ida–Man claimed entitlement to the proceeds by virtue of an ownership interest in the seed.

The trial court denied Curry's claim to the proceeds and released the proceeds to Hesston and Ida–Man. Curry moved for reconsideration. In denying Curry's motion for reconsideration, the trial court ruled:

1. Curry does not have a lien on the seed pursuant to I.C. § 45–805.

2. Curry has a lien on Ida–Man's interest in the seed pursuant to I.C. § 28–7–209(1).

3. Pursuant to I.C. § 28–7–209(3), Curry's lien is not enforceable as to Hesston's security interest in the seed.

4. Hesston is entitled to the proceeds from the sale of the seed until Ida–Man's debts secured by Hesston's security interest in the seed are paid.

This Court granted Curry's request for permission to appeal the trial court's order denying reconsideration.

The parties to this appeal agree Curry has a lien on the seed that is effective as to any interest that Ida–Man or the harvesters have in the seed. The appeal concerns only whether Curry's lien is effective

against Hesston's security interest in the seed.

## II.

### CURRY'S LIEN ARISES UNDER I.C. § 28–7–209, RATHER THAN UNDER I.C. § 45–805.

Curry asserts that its lien arises under I.C. § 45–805, rather than under I.C. § 28–7–209. We disagree.

■ Recently, we have pointed out the analysis for determining whether a statute that existed before the UCC was enacted in Idaho was repealed by that enactment. *See Coeur d'Alene Mining Co. v. First Nat'l Bank*, 118 Idaho 812, 817–18, 800 P.2d 1026, 1031–32 (1990). I.C. §§ 28–10–102(1) and 28–10–103 state that acts and parts of acts that are inconsistent with the UCC are repealed. Section 28–10–102(1)(a)–(b) lists statutes that are specifically repealed, while § 28–10–104 lists exceptions that are not repealed. Applying this analysis, we conclude that I.C. § 45–805, so far as it relates to warehouse liens, was repealed by the enactment of I.C. § 28–7–209:

1. I.C. § 45–805 is not listed in I.C. § 28–10–102(1) as one of the statutes specifically repealed by the UCC.
2. I.C. § 45–805, so far as it relates to warehouse liens, is inconsistent with I.C. § 28–7–209. These two statutes state different ways of determining the priority of a lien. For example, I.C. § 45–805(a) provides that a lien prevails over a prior perfected security interest if the person seeking to establish the lien gives the secured party a three-day notice before rendering service to the owner of the personal property. Under I.C. § 28–7–209(3)(a), a warehouse lien is effective against any person, including the holder of a prior perfected security interest, "who so entrusted the bailor with possession of the goods that a pledge of them by [the bailor] to a good faith purchaser for value would have been valid." Therefore, so far as it relates to warehouse liens, I.C.

§ 45–805 was repealed by implication by the UCC. *See* I.C. §§ 28–10–102(1) and 28–10–103.

3. The exception to repeal by implication contained in I.C. § 28–10–104(1) does not apply to the repeal of I.C. § 45–805, so far as it relates to warehouse liens. That exception states:

28–10–104. Laws not repealed.—(1) The chapter on Documents of Title (chapter 7) does not repeal or modify any laws prescribing the form or contents or documents of title or the services or facilities to be afforded by bailees, or otherwise regulating bailees' businesses in respects not specifically dealt with herein....

We doubt that warehouse liens regulate warehouses' businesses in the sense referred to in I.C. § 28–10–104. *See* I.C. § 28–10–104 comment (referring to provisions of federal legislation such as the Harter Act, the Carriage of Goods by Sea Act, the Warsaw Convention on International Air Transportation and section 20(11) of the Interstate Commerce Act). Even if I.C. § 45–805 were considered to be a law regulating bailees' businesses, however, warehouse liens are specifically dealt with in I.C. § 28–7–209.

## III.

### CURRY'S LIEN IS NOT EFFECTIVE AGAINST HESSTON'S SECURITY INTEREST IN THE SEED.

Curry asserts that its lien is effective against Hesston's security interest in the seed. We disagree.

Pursuant to I.C. § 28–7–209(1), Curry had a lien against Ida–Man and the harvesters for its charges for cleaning, processing, and storing the seed. The issue presented for our resolution is whether Curry's lien is effective against Hesston under I.C. § 28–7–209(3)(a). The pertinent part of this section provides:

(3)(a) A warehouseman's lien for charges and expenses under subsection (1) ... is also effective against any person who so entrusted the bailor with possession of the goods that a pledge of

them by [the bailor] to a good faith purchaser for value would have been valid but is not effective against a person as to whom the document confers no right in the goods covered by it under section 28–7–503.

I.C. § 28–7–209(3)(a).

Curry argues that priority is determined under I.C. § 28–9–310. This statute provides:

> When a person in the ordinary course of [the person's] business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest *unless the lien is statutory and the statute expressly provides otherwise.*

I.C. § 28–9–310 (emphasis added).

■ Under this statute, Curry's lien pursuant to I.C. § 28–7–209(1) takes priority over Hesston's perfected security interest unless I.C. § 28–7–209(3)(a) expressly provides otherwise. We conclude that I.C. § 28–7–209(3)(a) does expressly provide otherwise.

Pursuant to I.C. § 28–7–209(3)(a), Curry's lien is effective against Hesston only if Hesston so entrusted Ida–Man with possession of the seed that a pledge of the seed by Ida–Man to a good faith purchaser for value would have been valid. Also, Curry's lien is not effective against Hesston if under I.C. § 28–7–503, the weight tickets confer no right in the seed to Hesston. These express provisions of I.C. § 28–7–209(3)(a) take precedence over the priority provided in I.C. § 28–9–310.

We have frequently considered the comments to the official text of the UCC in determining the meaning of the text. *Coeur d'Alene Mining Co.,* 118 Idaho at 818, 800 P.2d at 1032. We are supported in our conclusion here by the comment to the official text of I.C. § 28–7–209(3)(a), which includes this statement:

> Where the third party is the holder of a security interest, the rights of the warehouseman depend on the priority given to

a hypothetical bona fide pledgee by Article [Chapter] 9, particularly Section 9–312. Thus the special priority granted to statutory liens by Section 9–310 does not apply to liens under subsection (1) of this section, since subsection (3) "expressly provides otherwise" within the meaning of Section 9–310.

We must then turn to the question whether Hesston so entrusted Ida–Man with the possession of the seed that a pledge of the seed to a hypothetical bona fide pledgee would have given the pledgee priority over Hesston. A pledge is defined as "a bailment; it is a bailment made for the purpose of security. Usually it secures a debt...." R. Braucher & A. Sutherland, Commercial Transactions 135 (2d ed. 1958).

I.C. § 28–9–312 states the priorities among conflicting security interests in the same collateral. In all cases not governed by other rules stated in this section, conflicting security interests rank according to priority in time of filing or perfection. I.C. § 28–9–312(5)(a). None of the other rules stated in the section apply. Therefore, since Hesston's security interest in the seed was perfected before the seed was delivered to Curry, Hesston's security interest has priority.

Curry argues that the decision in *Vollmer C. Co., v. Union Warehouse & Supply Co.,* 43 Idaho 37, 248 P. 865 (1926) dictates a different result than the one we have reached. In *Vollmer,* the Court said:

> A warehouseman has a lien "on goods deposited or on the proceeds thereof in his hands, for all lawful charges for storage.... of the goods; ...." (C.S., sec. 6145.) The statute does not make such a lien superior to that of the lien of a chattel mortgage on the stored goods. But a warehouseman's lien for storage takes precedence over the lien of a chattel mortgage where the mortgagee consents to the storage. (*Schmidt v. Bekins Van Storage Co.,* 27 Cal.App. 667, 155 Pac. 647).

43 Idaho at 43, 248 P. at 866–67.

Curry would have us apply *Vollmer* as authority for the proposition that consent by the holder of a prior perfected security

interest to storage constitutes entrustment as contemplated in I.C. § 28–7–209(3)(a). The basis of this argument is that at the time *Vollmer* was decided, § 6146 of the Idaho statutes provided similarly to I.C. § 28–7–209(3)(a), as follows:

[A] warehouseman's lien may be enforced:

. . . .

2. Against all goods belonging to others which have been deposited at any time by the person who is liable as debtor for the claims in regard to which the lien is asserted if such person had been so intrusted with the possession of the goods that a pledge of the same by him at the time of the deposit to one who took the goods in good faith for value would have been valid.

C.S. § 6146.

Section 6146 was not cited in *Vollmer*, however. Section 6145 was the only statute cited. Section 6145 did not deal with priority of the warehouse lien, but only with the claims that were included in the lien. In addition, the California case cited in *Vollmer—Schmidt v. Bekins Van & Storage Co.*—did not cite California statutes in support of the statement at issue. In *Schmidt*, the California court cited 40 Cyc. 458 as the source of the rule:

A warehouseman is not entitled to retain mortgaged property to enforce his lien for charges when it was stored in violation of the provisions of the mortgage, without the mortgagee's consent, and no promise can be implied from the mortgage's silence.

155 P. at 648.

Consent is not the issue in this case. The issue is whether Hesston so entrusted the seed to Ida–Man that Ida–Man could have pledged the seed to a hypothetical bona fide pledgee to defeat Hesston's perfected security interest. Our analysis of this issue is not affected by *Vollmer*.

## IV.

## CONCLUSION.

We affirm the order of the trial court and remand the case for further proceedings consistent with our opinion.

We award costs on appeal to Hesston. We award no attorney fees on appeal.

BAKES, C.J., BISTLINE and BOYLE, JJ., and ROWETT, J. Pro Tem., concur.