**In re SHARON STEEL CORPORATION, et al., Debtors.**

**CITIBANK, N.A., as Agent for Lenders Listed on Exhibit "A" Attached to Complaint, Plaintiff,**

v.

**SHARON STEEL CORPORATION, Mueller Industries, Inc., Chadderton Trucking, Inc., Bi–State Storage and Nick Strimbu, Inc., Defendants.**

Bankruptcy Nos. 92–10958, 92–10959 and 92–10961. Adv. No. 94–1048.

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 12, 1995.

James D. Newell, Pittsburgh, PA, for Citibank, N.A., as agent.

James G. McLean, Pittsburgh, PA, for Mueller Industries, Inc.

Dianne M. Lancaster, Pittsburgh, PA, for Sharon Steel Corp.

P. Raymond Bartholomew, Sharon, PA, for Bi–State Storage.

Richard J. Parks, Erie, PA, for Chadderton Trucking, Inc. and Nick Strimbu, Inc.

Philip E. Beard, Pittsburgh, PA, for Official Committee of Unsecured Creditors.

*OPINION*

WARREN W. BENTZ, Chief Judge.

*Introduction*

Sharon Steel Corporation, Sharon Specialty Steel, Inc., and Monessen, Inc. (collectively "Debtor") each filed a separate voluntary Petition under Chapter 11 of the Bankruptcy Code on November 30, 1992 (the "Petition Date"). Pursuant to Order dated December 3, 1992, the three cases are being jointly administered.

The within Complaint involves a dispute over entitlement to $480,000 in proceeds from the sale of inventory which is presently held in an escrow account (the "Fund"). Citibank, N.A., as Agent for Lenders listed on Exhibit "A" to Complaint ("Citibank") claims that it is entitled to the Fund by virtue of a first priority security interest in the Debtor's inventory. Bi–State Storage ("Bi–State"), Chadderton Trucking, Inc. ("Chadderton") and Nick Strimbu, Inc. ("Strimbu") claim that they are entitled to the Fund by virtue of warehouseman's and carrier's liens which they assert have priority over Citibank's security interest. Bi–State asserts a claim for $43,016.62. Chadderton asserts a claim for $225,139.62 and Strimbu asserts a claim for $281,922.75.

Mueller Industries, Inc. ("Mueller") supports Citibank's position and claims a second priority security interest in the Fund behind Citibank. The Debtor supports Citibank's position.

Presently before the Court is Citibank's Motion for Summary Judgment and a Counter–Motion for Summary Judgment filed by Chadderton and Strimbu.

*Facts*

Prior to the Petition Date and in connection with the consummation of a plan of reorganization in the prior Sharon Steel Chapter 11 case, the Debtor and Citibank entered into a credit agreement dated December 28, 1990 ("Credit Agreement").

Article VII of the Credit Agreement, in which the Debtor is identified as "Holdings," provides in relevant part:

7.1 *Liens, Etc.* Holdings shall not create, enter into any agreement to create, or suffer to exist, nor shall it permit any of its Subsidiaries to create, enter into any agreement to create, or suffer to exist, any Lien upon, or with respect to, any of its or such Subsidiary's properties, whether now owned or hereafter acquired, or assign, or permit any of its Subsidiaries to assign, any right to receive income, except:

.    .    .    .    .

(i) Liens arising by operation of law in favor of materialmen, mechanics, warehousemen, carriers, lessors or other similar Persons incurred by Holdings or any of its Subsidiaries in the Ordinary course of business which secure its obligations to such Person; *provided, however,* that (i) Holdings or such Subsidiary is not in default with respect to such payment obligation to such Person or is in good faith and by appropriate proceedings commenced within 15 days of the attachment of such liens diligently contesting such obligation and adequate provision is made for the payment thereof or (ii) the consequence of all such failures has no reasonable likelihood of having a Material Adverse Effect [1];

.    .    .    .    .

7.2 *Indebtedness.* Holdings shall not create or suffer to exist, nor shall it permit any of its Subsidiaries to create or suffer to exist, any Indebtedness except:

.    .    .    .

(c) current liabilities in respect of taxes, assessments and governmental charges or levies incurred, or claims for labor, materials, inventory, services, supplies and rent-

---

1. A "Material Adverse Effect," is defined as "an effect that would result in a Material Adverse Change." (Credit Agreement, p. 30). A Material Adverse Change is defined as:

    a material adverse change in any of . . . (iv) the perfection or priority of the Liens granted pursuant to the Collateral Documents [which includes any security agreements] with respect to Collateral having an aggregate value of $250,000 or more.

(Credit Agreement, p. 30)

als incurred, or for goods or services purchased, in the ordinary course of business;

(d) Indebtedness secured by Liens permitted by Section 7.1(b), (c), (d), (e), (f), (g), (h), (o) and (p);

.    .    .    .    .

On the same date, December 28, 1990, the Debtor and Citibank also entered into a security agreement ("Security Agreement"). The Security Agreement provides Citibank a security interest in substantially all of the Debtor's assets.

Paragraph 1 of the Security Agreement provides "Defined Terms." "Permitted Liens" is defined as "liens permitted by Section 7.1 of the Credit Agreement ..."

Paragraph 5(g) of the Security Agreement provides:

(g) *Limitation on Liens on Collateral.* The Grantor will not create, permit or suffer to exist, and will defend the Collateral against and take such other action as is necessary to remove, any Lien on the Collateral except Permitted Liens, ...

Schedule II attached to the Security Agreement provides a listing of "outside processor/warehouse" locations where portions of the Debtor's inventory and equipment are located. Included on the list of locations are:

Bi–State Storage/Steel Trucking Warehouse
104 Church Street
Wheatland, PA 16161

Ed Chadderton Trucking Warehouse
Budd Street
Sharon, PA 16146

Nick Strimbu, Inc.
3500 Parkway Road
Brookfield, OH 44403

Bi–State
100 Shenango Street
Wheatland, PA 16161

Citibank "pre-filed" UCC–1 financing statements on December 27, 1990 to perfect its security interest in the Debtor's assets.

In early 1993, Chadderton sought relief from the automatic stay, to permit Chadderton to sell the inventory in its possession to satisfy its alleged warehouseman's and carrier's liens which arose on and after May 16, 1991. Citibank opposed the relief asserting a prior security interest in the inventory.

On or about April 26, 1993, the Debtor filed a motion to sell inventory including that which was in storage with Bi–State, Chadderton and Strimbu. On May 21, 1993, an Order was entered approving Debtor's motion to sell. Pursuant to the Order, the Fund was created. Any existing liens of Bi–State, Chadderton, Strimbu, Citibank and Mueller attached to the Fund to the same extent that such liens were attached to and were perfected in the inventory prepetition and with the same priority.

We are now required to determine the priority of the interests in the Fund.

### Assertions

Bi–State asserts that the Debtor placed certain steel inventory in storage at its location on various dates prior to the Petition Date, that the Debtor acted with authority from or acquiescence of Citibank, that the Debtor had actual authority, implied authority, and/or apparent authority to place said inventory in storage, and that Bi–State has a warehouseman's lien which attached to the stored inventory which has priority over Citibank's security interest. Bi–State also asserts a claim for storage expenses under 11 U.S.C. § 506(c) for preserving the inventory for the benefit of Citibank.

Chadderton and Strimbu assert that they transported and stored the Debtor's steel inventory; that Citibank benefitted from the services provided; and that the services were provided with Citibank's knowledge. Chadderton and Strimbu assert warehouseman's and carrier's liens with priority over Citibank's security interest. Chadderton and Strimbu further assert a right to payment under 11 U.S.C. § 506(c) and assert that principals of marshalling are necessary to require Citibank and Mueller to assert their security interests in other assets.

Citibank asserts that its security interest in the inventory was perfected "first in time" and therefore primes any interest that might be held by warehousemen and because a

carrier's lien is not effective where the carriers had notice of Citibank's security interest in the inventory.

In its Reply Brief, Citibank requests that its Motion for Summary Judgment be treated as a Motion for Partial Summary Judgment solely on the issue of priority between its security interest and the warehouseman's or carrier's liens asserted by Bi–State, Chadderton and Strimbu. Citibank asserts that if the Court finds that the warehouseman's or carrier's liens have priority over its security interest, it may be necessary to engage in discovery concerning the existence, validity and extent of the warehouseman's or carrier's liens. Citibank also reserves the right to respond to requests for payment of § 506(c) expenses and to the marshalling arguments until after the Court determines whether Citibank's security interest has priority over the warehouseman's or carrier's liens.

For purposes of this Opinion, we assume that valid warehouseman's and carrier's liens exist, although Citibank has not conceded that fact.

### Discussion

### I. Warehouseman's Liens

■ The Pennsylvania Uniform Commercial Code § 9310 sets forth the priorities between perfected security interests and liens arising by operation of law such as a warehouseman's or carrier's lien. 13 Pa. Cons.Stat.Ann. § 9310 (Purdon, 1984). § 9310 provides:

> § 9310. *Priority of certain liens arising by operation of law.*
>
> When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

The lien of a warehouseman is granted by statute under 13 Pa.Cons.Stat.Ann. § 7209(a) (Purdon, 1984). Section 7209(c)(1) provides:

> (1) The lien of a warehouseman for charges and expenses under subsection (a) or a security interest under subsection (b) is also effective against any person who so entrusted the bailor with possession of the goods that a pledge of them by him to a good faith purchaser for value would have been valid but is not effective against a person as to whom the document confers no right in the goods covered by it under section 7503 (relating to document of title to goods defeated in certain cases).

13 Pa.Cons.Stat.Ann. § 7209(c)(1) (Purdon, 1984).

The Uniform Commercial Code Comment to § 7209 provides in relevant part:

> 3. Subsection (1) and (2) validate the lien and security interest "against the bailor." As against third parties, subsection (3)(a) continues the rule under the prior uniform statutory provision that to validate the lien the owner must have entrusted the goods to the depositor, and that the circumstances must be such that a pledge by the depositor to a good faith purchaser for value would have been valid. Thus the owner's interest will not be subjected to a lien or security interest arising out of a deposit of his goods by a thief. The warehouseman may be protected because of the actual, implied or apparent authority of the depositor, because of a Factor's Act, or because of other circumstances which would protect a bona fide pledgee, unless those circumstances are denied effect under Section 7–503. Where the third party is the holder of a security interest, the rights of the warehouseman depend on the priority given to a hypothetical bona fide pledgee by Article 9, particularly Section 9–312. Thus the special priority granted to statutory liens by Section 9–310 does not apply to liens under subsection (1) of this section, since subsection (3) "expressly provides otherwise" within the meaning of Section 9–310.

13 Pa.Cons.Stat.Ann. § 7209, U.C.C. Comment (Purdon, 1984).

The Uniform Commercial Code sets forth priorities among conflicting security interests. *See,* 13 Pa.Cons.Stat.Ann. § 9312 and the sections referred to therein. Section 9310 covers priorities between perfected se-

curity interests and liens arising by statute or rule of law. A lien "given by statute or rule of law ... takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise." 13 Pa.Cons.Stat.Ann. § 9310 (Purdon, 1984).

Section 7209(c) provides a limitation on the priority of a warehouseman's lien. "[A] warehouseman's lien is not effective against third party secured interests unless the depositor-debtor had power to create a valid pledge." *In re Siena Publishers Associates,* 149 B.R. 359, 364 (Bankr.S.D.N.Y.1993) (citations omitted).

In *Siena,* the court held that the debtor could not validly pledge its inventory to a bona fide pledgee for value because the secured party possessed a validly perfected security interest in all of the debtor's assets, including its inventory. *Id.* In *Siena,* there was no indication that the perfected secured party had entrusted the inventory to the bailor with authority to store the inventory.

In *K Furniture Company v. Sanders Transfer & Storage Co., Inc.,* 532 S.W.2d 910 (Tenn.1975), the Supreme Court of Tennessee held that in the absence of a showing that the secured party delivered or entrusted the goods to the debtor with actual or apparent authority to store the goods or any evidence that the secured party acquiesced in the debtor's procurement of any document of title, the security interest of the secured party takes priority over a warehouseman's lien. *Id.*

In *Disch v. Raven Transfer and Storage Co.,* 17 Wash.App. 73, 561 P.2d 1097 (Wash. App.1977), where the lessor of a furnished house did not consent to the lessee's storing furniture and lessor did not misrepresent ownership in any way other than giving lessee possession of the furniture and did not acquiesce in lessee's procurement of a warehouse receipt, the court held that the warehouseman was not entitled to a lien for storage of the goods placed in the warehouse without the knowledge or consent of the lessor. *Id.*

In another case which discusses the priority between a warehouseman's lien and prior perfected security interest, the Supreme Court of Idaho held that the secured creditor's prior perfected security interest in goods had priority over a warehouseman's lien. *Curry Grain Storage, Inc. v. Hesston Corp.,* 120 Idaho 328, 815 P.2d 1068 (Idaho 1991). The court stated that the prior secured party's consent to the storage was not the issue; the issue was limited to whether the prior secured party so entrusted the seed to the bailor that the bailor could have pledged the seed to a hypothetical bona fide pledgee to defeat the prior security interest. *Id.* The fact that the secured party allowed the goods to be transferred to the warehouseman for storage did not constitute the type of entrustment indicated in § 7209(3)(a) and thus, the prior security interest which was first in time had priority over the warehouseman's lien. *Id.*

■ The purpose of requiring the filing of financing statements is to put potential subsequent lenders on notice to inquire whether a secured interest exists. *In re Kenco Consolidated, Inc.,* 153 B.R. 348, 349–50 (Bankr. M.D.Fla.1993); *In re Flores De New Mexico, Inc.,* 151 B.R. 571, 583 (Bankr.D.N.M.1993). When the potential lender is put on notice, his next inquiry is to examine the security agreement to determine the extent of the security interest.

Had Bi–State, Chadderton and Strimbu examined Citibank's Credit Agreement and Security Agreement, they would have determined that under the loan documentation, the Debtor was permitted to incur warehouseman's and carrier's liens in the ordinary course of business, and that such liens were "Permitted Liens" under the Security Agreement. Bi–State, Chadderton and Strimbu would have further determined that Citibank knew that the Debtor had stored and would continue to store inventory in their warehouses. Bi–State, Chadderton and Strimbu were specifically named in the Security Agreement as warehouse locations where portions of the Debtor's inventory was located.

Under the circumstances of this case, it cannot reasonably be held that Citibank, with its knowledge of the Debtor's storage of its inventory at the Bi–State, Chadderton and

Strimbu warehouses and its loan documentation specifically permitting warehouseman's and carrier's liens, is entitled to have it security interest take priority over the warehouse liens.

By permitting the Debtor to store inventory at the Bi–State, Chadderton and Strimbu warehouses and permitting the Debtor to incur warehouseman's and carrier's liens in the ordinary course of its business, Citibank effectively permitted the Debtor to transfer its inventory to the pledgees (Bi–State, Chadderton and Strimbu) as security for the pledgor's (Debtor) payment of the warehouseman's and carrier's liens.

Citibank asserts that rather than permitting warehouseman's liens and carrier's liens, § 7.1(i) of the Credit Agreement prohibited such liens because the Debtor was required to timely pay warehouse-man's and carrier's obligation and because the Debtor was limited to an aggregate amount of $250,000 in such unpaid obligations. We cannot agree. Citibank knew that the warehouseman's and carrier's liens existed, that charges arose periodically, and that such charges were automatically secured by liens. It, in effect, subordinated its security interest to warehouseman's and carrier's liens incurred by the Debtor in the ordinary course of business. The purpose of the limiting language in § 7.1(i) was to require the Debtor to limit Citibank's exposure on the warehouse-man's and carrier's liens. The Debtor's failure to pay its warehousemen and carriers was a default by the Debtor. Citibank could have declared the Debtor in default or taken such other steps as might be necessary to stop the accrual of warehouseman's or carrier's liens. Citibank did not take action, even though it permitted such liens and had knowledge that the Debtor was incurring such expense.

We hold that the warehouse liens, to the extent that they exist, asserted by Bi–State, Chadderton and Strimbu are superior to and take precedence over the security interest held by Citibank.[2]

## II. Carrier's Liens

The lien of a carrier arises under § 7307 which provides:

(a) Charges and expenses covered by lien.—A carrier has a lien on the goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods or incident to their transportation or reasonably incurred in their sale pursuant to law. But against a purchaser for value of a negotiable bill of lading the lien of a carrier is limited to charges stated in the bill or the applicable tariffs, or if no charges are stated then to a reasonable charge.

(b) Persons against whom lien effective.— A lien for charges and expenses under subsection (a) on goods which the carrier was required by law to receive for transportation is effective against the consignor or any person entitled to the goods unless the carrier had notice that the consignor lacked authority to subject the goods to such charges and expenses. Any other lien under subsection (a) is effective against the consignor and any person who permitted the bailor to have control or possession of the goods unless the carrier had notice that the bailor lacked such authority.

13 Pa.Cons.Stat.Ann. § 7307 (Purdon, 1984).

Citibank asserts that the carrier's liens are ineffective because the carriers had notice of its security interest in the inventory.

Clearly, Citibank permitted the Debtor to have control and possession of the goods. Even if the carriers had knowledge of Citibank's security interest, Citibank makes no allegation that the Debtor lacked authority to ship its inventory. Mere knowledge of Citibank's security interest is not an indication that the carriers had any knowledge or reason to know that the Debtor did not have authority to ship its inventory.

2. We do not have before us in this Motion for Summary Judgment, and do not address, the issue of whether Mueller's security interest is subject to the same infirmities as that of Citibank, or other issues such as timing which may have an affect on Mueller's interest versus the interests of warehousemen and carriers.

Further, as in the case of the warehouseman's liens, Citibank's loan documentation expressly permits the Debtor to incur carrier's liens in the ordinary course of its business.

We hold that to the extent that they exist, the carrier's liens asserted by Bi–State, Chadderton and Strimbu are superior to and take precedence over the security interest held by Citibank.

Accordingly, Citibank's Motion for Summary Judgment must be refused.

### III. *Chadderton and Strimbu Counter–Motions for Summary Judgment*

Chadderton and Strimbu request that their "Counter–Motion for Summary Judgment be granted and that Citibank be immediately ordered to turn over funds sufficient to pay [their] perfected lien interests." While we have determined that Chadderton and Strimbu's warehouseman's and carrier's liens have priority over Citibank's security interest, we are unable to grant the counter-motion for summary judgment because on the record presently before the Court, we are unable to determine the existence, validity and extent of the warehouseman's or carrier's liens. A pretrial scheduling order will be issued to allow the parties time for discovery on the remaining issues to be followed by pretrial statements and a pretrial conference.

### ORDER

This 12 day of January, 1995, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. The Motion for Summary Judgment filed by Citibank, N.A., as Agent for Lenders listed in Exhibit "A" attached to the Complaint, is REFUSED.

2. To the extent that Chadderton Trucking, Inc., Bi–State Storage, and Nick Strimbu, Inc. are able to subsequently prove the existence, validity and extent of their alleged warehouseman's and carrier's liens, such liens are superior to and take precedence over the security interest held by Citibank.

3. The Counter–Motion for Summary Judgment filed by Chadderton Trucking, Inc.

and Nick Strimbu, Inc. is REFUSED, except as ordered in paragraph 2 above.

4. This is an interim order and is not subject to appeal until a decision is rendered on the remaining issues.